FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 97-1012-CIV-ORL-22C
Judge: Conway

DAVID J. MCKENNAN

      Plaintiff,

v.

AIRTRAN AIRWAYS, INC.

      Defendant.

_____/

**NOTICE OF INTENTION TO DISCLOSE CERTAIN TERMS OF PLAINTIFF'S
CONFIDENTIAL SETTLEMENT AGREEMENT WITH AIRTRAN AIRWAYS, INC.
<u>IN THE EVENT IT BECOMES NECESSARY TO ENFORCE ITS TERMS</u>**

      Plaintiff hereby gives Notice to AirTran Airways, Inc. ("AirTran") and the Court of his intention to disclose certain terms contained in the February 02, 1999, Settlement Agreement with AirTran in the event it becomes necessary to enforce terms of the Agreement in an upcoming labor arbitration proceeding that affects Plaintiff's seniority and date of hire at AirTran. In support of this Notice, Plaintiff states the following:

      1.      In order to settle Plaintiff's 1997 law suit against AirTran for wrongful termination in retaliation for his union organizing activities, Plaintiff and AirTran entered into a Settlement Agreement and General Release to resolve their differences. The Court thereupon dismissed Plaintiff's action without prejudice on November 5, 1998. The Parties executed the Settlement

1



Agreement on of February 02, 1999, with the signature of AirTran's Vice President-Operations,

Klaus Goersch and the suit was thereafter dismissed with prejudice. **[EXHIBIT 1]**

2.    The Settlement Agreement states at Paragraph 3 (a) that:

> McKennan will resume employment with his original seniority date, without a break in service and as though he had been continuously employed, for all purposes for which the Company utilizes seniority or longevity.

3.    The Settlement Agreement states at Paragraph 3 (h) that:

> McKennan will have the same rights and privileges and will be treated the same as his AirTran Airways peers in any seniority integration of the AirTran Airlines/AirTran Airways seniority lists. These rights and privileges include, but are not limited to, any credit for "Destination Sun" and "Conquest Sun" time, and any adjustment to original "date of hire" credited to other Airways pilots for their participation in earlier pilot training classes.

4.    The Settlement Agreement also includes a confidentiality clause at Paragraph 8,

which states in part:

> McKennan covenants and agrees that, except as required by law, *or as necessary to enforce the terms of the Agreement*, he shall not publish, communicate, or disclose the terms of this agreement to any person, nor shall McKennan cause this Agreement and/or its terms to be published or communicated by and through his agents, relatives, or associates... [emphasis added]

5.    Since Plaintiff's return to AirTran in March 1999, the Company has, to date, honored

the terms of the Settlement Agreement. In conformance with Paragraph 3 (a) of the Agreement,

McKennan was reinstated to the seniority position he held prior to his termination. In addition, in

conformance with Paragraph 3 (h), McKennan's date of hire was determined to be December 20,

1993. McKennan's December 20, 1993, date of hire recognizes his attendance at B737 aircraft

training at "Conquest Sun" on that date along with 9 other AirTran pilots.

6.    The December 20, 1993 date of hire for the pilots who attended B737 aircraft training

2

at "Conquest Sun" on that date was recognized and adopted by both AirTran Airways and the National Pilot's Association pilots' union as the official AirTran date of hire for those specific pilots. This date of hire determination was made in direct negotiations between the Union and Company as part of the merger of the AirTran and ValuJet pilots' seniority lists in November of 1998.[1] AirTran has continuously utilized the December 20, 1993, date as the official date of hire for those pilots who attended B737 training at "Conquest Sun" on that date since at least December 14, 1998, when AirTran published an official pilot seniority and date of hire list recognizing December 20, 1993, as the date of hire for those 9 pilots. By the terms of his Settlement Agreement with AirTran, McKennan was included with the 9 other AirTran pilots who attended B737 training on December 20, 1993, at "Conquest Sun" and who were given that date as their official date of hire at AirTran.

7.     Now, five years after McKennan's return to AirTran as a pilot, AirTran has threatened his previously recognized right to a December 20, 1993, date of hire. In recorded testimony before an AirTran Airways System Board of Adjustment on March 29, 2003, Vice President Operations, Stephen Kolski stated at page 183, line 22, et. seq. of the transcript:

> Mr. Kolski: No, no. I understand the date of hire issue. I understand your date of hire was not December 20, 1993, because you admitted it on a record we are going to get by this court reporter.
>
> Mr. McKennan: Is that a threat, Mr. Kolski?
>
> Mr. Kolski: Yes. You finally got something straight here today, it's the first thing you have gotten straight.

---

[1]As part of that negotiation process between NPA and AirTran, the December 20, 1993, date of hire was specifically meant to apply only to the 9-10 pilots who actually attended B737 training on that date. A December 20, 1993, date of hire was not meant to apply to any other former "Destination Sun" pilot whose AirTran pilot training records did not reflect attendance at B737 training at "Conquest Sun" on that date.

And, at page 184, line 25, et. seq.:

> Mr. Kolski: I would suggest to you that you should have filed a grievance when somebody changed your hire date to December 20, 1993, and that you should be asked now to pay the company back all the extra money you have earned because of that.

> Mr. McKennan: I didn't – AirTran Airways gave me that date sir, I didn't –

> Mr. Kolski: AirTran Airways gave it to you and AirTran Airways, therefore, can take it away, so says the court, and you say it too. You cannot just pick and choose whose seniority date you want to adjust.

**[EXHIBIT 2, System Board Transcript. Pages 180-186 are included to provide the reader with the full flavor of Mr. Kolski's remarks.]**

8.      A Railway Labor Act arbitration hearing is now being scheduled that concerns the issue of seniority and date of hire for some AirTran pilots, including McKennan. If AirTran carries through on Mr. Kolski's threat to challenge, or not acknowledge, recognize, and support McKennan's previously established right to a <u>December 20, 1993</u>, date of hire and seniority date, such an action will breach its Settlement Agreement with McKennan and will directly threaten McKennan's previously established seniority and date of hire at the upcoming arbitration proceeding.

9.      Under terms of the Settlement Agreement at Paragraph 8, McKennan has the right to disclose terms in the Agreement "*as necessary to enforce the terms of the Agreement*."

WHEREFORE, in the event it becomes necessary to enforce the terms of the Settlement Agreement with AirTran at the upcoming arbitration hearing with regard to Plaintiff's right to seniority and a <u>December 20, 1993</u>, date of hire, Plaintiff hereby gives Notice that he will disclose those terms in the Agreement that pertain to his seniority and date of hire. In addition, Plaintiff reserves the right to enforce the Settlement Agreement through whatever other means are available, including further litigation in the district court, if necessary.

4

FURTHERMORE, Plaintiff will interpret a failure of AirTran to respond to this Notice within ten (10) days as AirTran's consent to the disclosure by Plaintiff of such terms in the Agreement that establish McKennan's seniority and date of hire and Plaintiff will consider AirTran's failure to respond to this Notice as a waiver of any rights AirTran might have to later object.

Respectfully submitted,

David J. McKennan
Florida Bar No. 0062014
12205 Paseo Way
Cooper City, FL 33026
Tele/Fax: 954-435-1124
Email: mckennan@earthlink.net

## CERTIFICATE OF SERVICE

I hereby certify that on <u>May 27, 2004</u>, I served a copy of:

NOTICE OF INTENTION TO DISCLOSE TERMS OF PLAINTIFF'S
CONFIDENTIAL SETTLEMENT AGREEMENT WITH AIRTRAN AIRWAYS, INC.
<u>IN THE EVENT IT BECOMES NECESSARY TO ENFORCE ITS TERMS</u>

to the individual indicated below by sending a copy of same via Fed Ex addressed as follows:

Richard Magurno, Esq.
Vice President, General Counsel and Secretary
AirTran Airways
9955 AirTran Boulevard
Orlando, FL   32827

By: David J. McKennan

# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID J. MCKENNAN,

      Plaintiff,

vs.                                      Case No. 97-1012-CIV-ORL-22C

AIRTRAN AIRWAYS, INC.,

      Defendant.
_____/

### SETTLEMENT AGREEMENT and GENERAL RELEASE

This Settlement Agreement and General Release (hereinafter referred to as "the Agreement") is made and entered into and by and among AirTran Airways, Inc. (hereinafter referred to as "the Company"), and David J. McKennan (hereinafter referred to as "McKennan").

WHEREAS, McKennan has filed a lawsuit, David J. McKennan v. AirTran Airways, Inc., Case No. 97-1012-CIV-ORL-22C, in the United States District Court for the Middle District of Florida, Orlando Division, challenging his termination from the Company's employ;

AND WHEREAS, the Company and McKennan wish to settle and resolve all outstanding issues between them without further litigation;

NOW THEREFORE, and for consideration of the mutual promises contained herein, the sufficiency of which is hereby acknowledged, the above-named parties agree and covenant as follows:

1.      The decision to terminate McKennan's employment is hereby overturned, and the Company agrees to remove from McKennan's files maintained by the Company any documents which reference or refer in any way to the matters giving rise to said termination. The parties agree that the documents identified in Exhibit A to this Agreement constitute all documents subject to the requirements of this paragraph. The parties agree that these documents will not be disclosed to any carriers with whom McKennan may apply for employment as a pilot in the future, it being their belief and intent that these documents fall under the "overturned discipline" exception to the Pilot Records Improvement Act (49 USCS § 44936(f)(1)(B)(ii)(II)). The parties further agree that these documents will not be disclosed to any other employers with whom McKennan may apply for employment in the future.

2.      The Company agrees to pay the gross amount of Fifteen Thousand Dollars ($ 15,000.00) to the law firm of Egan, Lev & Siwica. Said payment will be made within ten (10) days of the execution of this Agreement by all parties and constitute payment of legal fees and expenses. McKennan understands and agrees that the Company will withhold no federal income or other taxes from such amount and that McKennan will be solely responsible for the tax consequences, if any, of such payment made on his behalf by the Company. McKennan further understands and agrees that, if advised by its tax advisors to do so, the Company will report the payment to Egan, Lev & Siwica as income to McKennan by way of an IRS Form 1099.

- 2 -

3.    The Company agrees that, within ten (10) days of McKennan's providing written notice of his readiness to return to work, the Company will reinstate McKennan to his prior position as follows:

(a)    McKennan will resume employment with his original seniority date, without a break in service and as though he had been continuously employed, for all purposes for which the Company utilizes seniority or longevity.

(b)    McKennan will be entitled to all rights, privileges and benefits as provided in the Company-National Pilots Association ("NPA") collective bargaining agreement as if he had remained continuously employed without a break in service from his original date of hire.

(c)    McKennan will return to the position of First Officer, but will be compensated as if he held the position of Captain, according to his original seniority date, without a break in service, as though he had been continuously employed.

(d)    McKennan will be trained to proficiency as a First Officer.

(e)    For a period up to six (6) months from McKennan's return to work, the Company will provide him the training necessary to upgrade to Captain.  If he successfully completes upgrade training, McKennan, in the next bidding month, may use his original seniority date to bid and obtain a Captain's position.  Training failures, if

- 3 -

any, will be governed by the provisions of the collective bargaining agreement between the NPA and the Company.

(f)     During his requalification and subsequent upgrade training, McKennan will be exempt from any training locks specified in the AirTran-NPA collective bargaining agreement.  Thereafter, any training will be subject to the provisions of that agreement.

(g)     McKennan will be provided with an initial training course for the DC-9 or B-737 aircraft, which training includes a full course of ground school and simulator instruction, rather than any abbreviated course.

(h)     McKennan will have the same rights and privileges and will be treated the same as his AirTran Airways peers in any seniority integration of the AirTran Airlines/AirTran Airways seniority lists.  These rights and privileges include, but are not limited to, any credit for "Destination Sun" and "Conquest Sun" time, and any adjustments to original "date-of-hire" credited to other Airways pilots for their participation in earlier pilot training classes.

4.     All other terms, conditions, and privileges of McKennan's employment will be as specified in the Company-NPA collective bargaining agreement, as the same may be amended from time to time.

- 4 -

5.     McKennan agrees to dismiss with prejudice his lawsuit against the Company now pending in the United States District Court for the Middle District of Florida, Orlando Division, Case No. 97-1012-CIV-ORL-22C.  To comply with the promises contained in this paragraph, McKennan agrees to execute a Stipulation of Dismissal with Prejudice, in the form attached hereto as Exhibit B, to file such Stipulation in the above-named federal district court, and to serve a copy of the executed Stipulation on the Company, all within ten (10) days of the execution of this Agreement by all parties.

6.     McKennan, for himself, his heirs, executors, administrators, successors and assigns, hereby forever and finally settles, releases and discharges the Company, and its current and former directors, officers,  and other agents from any and all claims, rights demands, actions, causes of action, suits, charges, grievances, losses and damages of any nature whatsoever, in law or in equity, which he has or has had or may hereafter claim to have had arising from or by reason of any matter, act, omission, cause or thing whatever, whether known or unknown, which has heretofore occurred, including, but not limited to, claims or charges of employment discrimination or wrongful discharge.  Without limiting the generality of the foregoing, this release specifically includes any and all claims arising out of or in connection with McKennan's hire, his discharge from employment in 1997, or his employment relationship with this Company up to the execution of this Agreement.  Except as expressly provided for herein, the parties will bear their respective attorney's fees, costs, and expenses incurred in connection with the dispute

- 5 -

resolved herein, including, but not limited to, any fees, costs, or expenses incurred in connection with Plaintiff's Second Motion to Compel.

7.     The parties recognize that this Agreement is entered into to resolve disputed claims, and that any party's agreement hereto shall not be construed as an admission of any wrongdoing, or violation of any law.  To the contrary, it is understood that all parties hereto adhere to their respective views, and the Company expressly denies any and all liability.

8.     McKennan covenants and agrees that, except as required by law, or as necessary to enforce the terms of this Agreement, he shall not publish, communicate, or disclose the terms of this Agreement to any other person, nor shall McKennan cause this Agreement and/or its terms to be published or communicated by and through his agents, relatives, or associates. McKennan further agrees that a breach of this covenant shall entitle the Company to an award of liquidated damages in the amount of Thirty-Five Thousand Dollars ($35,000.00).  A breach of this provision by McKennan will not result in the rescission of the Agreement, either in whole or in part, nor will it affect any of the other terms, conditions, or obligations of the Company toward McKennan contained in the Agreement.  A breach of this provision by McKennan will not result, by itself, in any disciplinary action being brought by the Company against McKennan, nor will a breach be considered, by itself, grounds for any disciplinary action by the Company.  The parties agree that a breach of this provision will not occur if McKennan makes a statement to the following effect: "All disputes between McKennan and AirTran have been resolved.  As part of

- 6 -

this agreement, I have agreed to confidentiality language.  If you have any questions, contact AirTran."

9.      The parties agree that, should any changes be made to the Pilots Records Improvement Act of 1996 that affect the Company's obligation or ability to disclose McKennan's records in accordance with the terms of this Agreement, that they will meet, confer, and take whatever steps are necessary, including making any necessary changes to this Agreement, to permit the Company to comply with its legal obligations.

10.     This Agreement is binding on the parties and their successors, assigns and executors.

11.     This Agreement constitutes the entire understanding of the parties.  McKennan and the Company were represented by legal counsel of their choosing in the negotiation and execution of this Agreement.  The parties have read and understand the terms of this Agreement and enter into this Agreement freely and voluntarily.

12.     The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.  Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be effected thereby and said illegal or invalid part, terms or provision shall be deemed not to be part of this Agreement.

- 7 -

AGREED TO THIS _30th_ DAY OF _January_ , 1999:

DAVID J. McKENNAN

AGREED TO THIS _2nd_ DAY OF _February_ , 1999:

AIRTRAN AIRWAYS, INC.

By _____

    Klaus Goersch
    Vice President - Operations

- 8 -

# EXHIBIT A

1.  D. Griffin Memo regarding conversation with Plaintiff concerning Campbell

2.  Flight Ops Pilot Conduct Review, D. Griffin, 6/16/96

3.  Memorandum to Henning, 6/21/96 (9 pages)

4.  McKennan Pilot Memo, 6/30/96 (7 pages)

5.  Mainhart Memorandum, with attachments (4 pages)

6.  S. Kelleher - To Whom It May Concern, 6/25/96

7.  E-mail Massecar to Stewart and Griffin, 7/31/96 (2 pages)

8.  McKennan to Pilots, 7/23/96, with attachments (5 pages)

9.  Line Pilot Report, McKennan, 12/4/96 (5 pages)

10. Flight Ops Pilot Conduct Review, 12/11/96 (2 pages)

11. E-mail, Nouhi and Pahlman, 2/1/97

12. Letter, Brown to Goersch, 2/27/97

13. Memo, D. Griffin, 3/1/97, "Notes Regarding Termination"

14. Fax Cover Sheet, McKennan to Griffin, and attached letter, 3/3/97 (2 pages)

15. Letter, Goersch to McKennan 4/1/97

16. Letter from McKennan to AirTran, dated 7/7/97, requesting copies of training and disciplinary record (1 page)

17. Personnel Status Charge Form, 2/28/98 (1 page)

18.    Any and all documents, letters, memorandum, notes, and any other written materials that refer to the termination of David J. McKennan or reference or refer in any way to the matters giving rise to said termination.

**EXHIBIT B**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID J. MCKENNAN,

     Plaintiff,

vs.                            Case No. 97-1012-CIV-ORL-22C

AIRTRAN AIRWAYS, INC.,            JUDGE ANNE C. CONWAY

     Defendant.

_____/

## STIPULATION OF DISMISSAL WITH PREJUDICE

    Plaintiff, David J. McKennan, pursuant to Rule 41 (a)(l)(ii) of the Federal Rules of Civil

Procedure, hereby dismisses this action with prejudice, each party to bear its own costs and fees.

    Respectfully submitted this _____day of _____, 1999.


_____        _____

E. SCOTT SMITH               JOSEPH EGAN, JR., ESQUIRE
FORD & HARRISON, LLP        EGAN, LEV & SIWICA, P.A.
1275 Peachtree Street, N.E.       P. O. Box 2231
Atlanta, GA 30309            Orlando, FL 32802
(404) 888-3800              (407) 422-1400
Counsel for Defendant         Counsel for Plaintiff

COPY   RECEIVED

NOV 9  1998

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID J. McKENNAN,
       Plaintiff

-vs-                                    CASE NO. 97-1012-CIV-ORL-22C

AIRTRAN AIRWAYS, INC.,
       Defendant

_____/

## ORDER

The Court having been advised by counsel that the above action has been settled, it is

ORDERED that this cause be hereby DISMISSED without prejudice to the right of any party, to

reopen the action within 60 days, upon good cause shown, or to submit a stipulated form of final

judgment.  Any pending motions are hereby DENIED as moot.  However, Plaintiff is given leave

to refile his Application for Attorney Fees and Costs (Dkt. 101) if the issues raised are not

resolved by the settlement.

DONE AND ORDERED in Chambers, Orlando, Florida, this ____ day of

_November_, 1998.

ANNE C. CONWAY
United States District Judge

Copies to:    Counsel of Record
              Courtroom Deputy
              Magistrate Judge

AO 72A
(Rev.8/82)



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID J. McKENNAN,                         :
                                           :
                Plaintiff,                 :
                                           :
        vs.                                :    CASE NO. 97-1012-CIV-ORL-22C
                                           :
AIRTRAN AIRWAYS, INC.,                     :    JUDGE ANNE C. CONWAY
                                           :
                Defendant.                 :

## STIPULATION OF DISMISSAL WITH PREJUDICE

Plaintiff David J. McKennan, pursuant to Rule 41 (a) (1)(ii) of the Federal Rules of Civil

Procedure, hereby dismisses this action with prejudice, each party to bear its own costs and fees.

Respectfully submitted this _16_ day of _February_, 1998.


_E. SCOTT SMITH_                            _JOSEPH EGAN, JR., ESQUIRE_
FORD & HARRISON LLP                        EGAN, LEV & SIWICA, P.A.
1275 Peachtree Street, N.E.                Post Office Box 2231
Atlanta, Georgia  30309                    Orlando, Florida  32802
(404) 888-3800

                                           Counsel for Plaintiff

Counsel for Defendant

# EXHIBIT 2

0001
1    AIRTRAN AIRWAYS/NATIONAL PILOTS ASSOCIATION
2
3        SYSTEM BOARD OF ADJUSTMENT
4
5          ORLANDO, FLORIDA
6
7            GRIEVANCES
8            802302-01
9            012703-04
10            012203-01
11
12          MARCH 29, 2003
13
14          THE CLARION HOTEL
15          3835 MCCOY ROAD
16          ORLANDO, FLORIDA
17
18        9:00 a.m. - 5:00 p.m.
19
20  REPORTED BY:  LYSSA URBAN, CERTIFIED SHORTHAND REPORTER AND
21          NOTARY PUBLIC, STATE OF FLORIDA AT LARGE.
22
23
24
25
0002
1        A P P E A R A N C E S
2    DAVID J. MCKENNAN, ESQUIRE
3      Attorney for the Grievant
4
    LAURA H. BACKUS, ESQUIRE
5    KATIE KELLEY, LAW INTERN
    NATIONAL PILOTS ASSOCIATION
6    3401 Norman Berry Drive
    Atlanta, Georgia  30344
7
      Attorney for The National Pilot's Association
8
9    MYLES J. TRALINS, ESQUIRE
    TRALINS & ASSOCIATES
10    2930 One Biscayne Tower
    Miami, Florida  33131
11
      Attorney for all other parties

0180
1       MR. MCKENNAN:  Okay.
2       MR. DEVANEY:  So you are saying that's the current
3    seniority list?
4       MR. MCKENNAN:  Well, let me suggest --
5       MR. KOLSKI:  You've asked him, does the current
6    list comply with the agreement, he said to the best of
7    his knowledge, it does.  If you have more questions,
8    ask them.
9       Q   (By Mr. McKennan) Okay.  What does -- let me find
10   the contract -- does this -- Okay.  Would you take a look at
11   this contract, dated January 1 of '03, the most current one,
12   and who is number one on the seniority list.
13      A   Mann.
14      Q   What's his date of hire?
15      A   12-20-93.
16      Q   What is Ed Marino's seniority number?
17      A   Number 4.
18      Q   What's his date of hire?
19      A   12-20-93.
20      Q   Does that list their birthdays on there,
21   Mr. Goersch?
22      A   Yes, it does.
23      Q   And is Bill Mann younger or older than Ed Marino?
24      A   He's younger.
25      Q   They both have the exact same date of hire; is that
0181
1    correct?
2       A   That's correct.
3       Q   May I read to you Section -- or draw your attention
4    to Section 3, B-1 of the pilots' collective bargaining
5    agreement.
6       MR. KOLSKI:  Are you asking for those dates to be
7    changed in your grievance --
8       MR. MCKENNAN:  I'm just trying to get an answer
9    from Mr. Goersch, here.
10      MR. KOLSKI:  Are asking for those two pilots to
11   flip-flop.
12      MR. MCKENNAN:  I'm showing what Mr. Goersch just
13   said is incorrect.
14      MR. KOLSKI:  All right.  Are you asking this board
15   adjustment to rule --

16    MR. MCKENNAN:  No --
17    MR. KOLSKI:  Then you are really dealing in
18    irrelevant and immaterial stuff.
19    MR. MCKENNAN:  I don't think so --
20    MR. KOLSKI:  No?
21    MR. MCKENNAN:  We are proving that the document
22    that Mr. Goersch just said complies with the contract
23    doesn't comply with the contract.
24    MR. KOLSKI:  Go to another area of inquiry.
25    MR. MCKENNAN:  Does the rest of the board
0182
1    understand that --
2    THE CHAIRMAN:  I understand --
3    MR. MCKENNAN:  The pilots here are not arranged by
4    date of birth.
5    MR. KOLSKI:  But you are not asking him to change
6    it?
7    MR. MCKENNAN:  That's up to the board.
8    MR. KOLSKI:  Well, you have to ask us to do
9    something.  Are you asking us to change the order based
10    upon birthdays, yes or no?  Answer it and we will go
11    on.
12    MR. MCKENNAN:  Let me reserve the question on that,
13    I would have to -- quite honestly, in all seriousness,
14    that would be a major change and something that's
15    completely --
16    MR. KOLSKI:  In all seriousness, you are wasting 15
17    people's time here going over something about birthdays
18    and you are not prepared to tell us you want them
19    changed.
20    MR. MCKENNAN:  Okay --
21    MR. GRIFFIN:  You're not wasting my time.
22    MR. KOLSKI:  Well, then answer the question.  Do
23    you want the birthdays changed, you want the people
24    changed --
25    MR. GRIFFIN:  Why don't you let him ask the
0183
1    question, because you --
2    MR. KOLSKI:  I am a board member, I asked him a
3    question.
4    MR. GRIFFIN:  He was asking him a question not
5    answering yours.
6    MR. MCKENNAN:  Let's cool our heads --
7    MR. KOLSKI:  No, I want an answer to the question.
8    Do you want this board to reverse the order of people

9    based upon birth dates; yes or no?  It's a very simple
10   question, it's a very simple answer.
11        MR. MCKENNAN:  It's too -- birth dates and date of
12   hire, yes.
13        MR. KOLSKI:  Birth dates, yes?
14        MR. MCKENNAN:  And date of hire, yes.
15        MR. KOLSKI:  So you want Mann and Marino to
16   reverse?
17        MR. MCKENNAN:  And everybody else that has a
18   December 20th date of hire.
19        MR. KOLSKI:  With birth dates?
20        MR. MCKENNAN:  By date of hire, Mr. Kolski, you are
21   leaving out the essential elements.
22        MR. KOLSKI:  No, no.  I understand the date of hire
23   issue.  I understand your date of hire was not
24   December 20, 1993, because you admitted it on a record
25   that we are going to get by this court reporter.
0184
1         MR. MCKENNAN:  Is that a threat, Mr. Kolski?
2         MR. KOLSKI:  Yes.  You finally got something
3    straight here today, it's the first thing you have
4    gotten straight.
5         MR. MCKENNAN:  Well, I would have to object to the
6    rest of the board in this regard --
7         THE CHAIRMAN:  Continue with your questions.
8         MR. MCKENNAN:  Are you attempting to intimidate me?
9         MR. KOLSKI:  No.
10        MR. MCKENNAN:  Yes, you are.
11        MR. KOLSKI:  No.
12        MR. TRALINS:  Well, all right.  For what it's
13   worth, Mr. Kolski --
14        MR. MCKENNAN:  He just made a threat to me,
15   personally, I take great umbrage of that, Mr. Kolski.
16        MR. KOLSKI:  You do?
17        MR. MCKENNAN:  Yes, sir.
18        MR. KOLSKI:  Okay.  Take the umbrage all you want,
19   I take umbrage to you wasting 15 people's time here
20   today asking questions which you are not prepared to
21   answer.
22        MR. MCKENNAN:  Our seniority has been stolen from
23   us.  If the -- I filed a federal district court
24   case and won --
25        MR. KOLSKI:  I would suggest to you that you should
0185
1    have filed a grievance when somebody changed your hire

2 date to December 20, 1993, and that you should be asked
3 now to pay the company back all the extra money you
4 have earned because of that.
5  MR. MCKENNAN:  I didn't -- AirTran Airways gave me
6 that date, sir, I didn't --
7  MR. KOLSKI:  AirTran Airways gave it you and
8 AirTran Airways, therefore, can take it away, so says
9 the court, and you say it, too.  You cannot just pick
10 and choose whose seniority date you want to adjust.
11  MR. MCKENNAN:  I thought we were attempting to
12 follow the collective bargaining agreement, sir, I
13 thought we were trying to do this as a court of law --
14  MR. KOLSKI:  We're also attempting to resolve your
15 grievance --
16  MR. MCKENNAN:  That's correct.
17  MR. KOLSKI:  And I'm asking, does your grievance
18 include a request to reverse the order of Mann --
19  MR. MCKENNAN:  No, it doesn't.
20  MR. KOLSKI:  Okay.  Thank you very much.  You
21 shouldn't ask any more questions about it.
22  MR. MCKENNAN:  The question to Mr. Goersch was
23 whether this seniority list complies with the
24 collective bargaining agreement.
25  MR. KOLSKI:  He answered it.
0186
1  MR. MCKENNAN:  As, no, it does not.
2  MR. KOLSKI:  Thank you.